Alright, our next case is Plains All American Pipeline v. Cook, No. 16-3631. May I reserve four minutes for rebuttal? You may. May it please the court, when the government has a history of enforcing a law in ways that affect constitutional rights and where it tries to compel compliance by threatening penalties, Article III does not bar the courthouse doors to the enforcement target, for three main reasons the district court erred in concluding otherwise. First, the facial due process and preemption claims here are ripe because the complaints allegations, the known features of this audit, and Delaware's enforcement history create a real and substantial likelihood that the state will use estimation in its audit of claims. Second, Plains suffered a substantial threat of real harm. Are there any instances where estimation is not used? I think for purposes of a declaratory judgment action under this court's cases, the question under Travelers and Presbyterian New Jersey would be, is there a real and substantial likelihood that this will happen? And we've alleged, and I think it is undisputed that estimation will be used where the target of an audit lacks records, and we've alleged that we lack records for the relevant period back to 1981 or 1986, depending on how you look at it. General ledger audits, quote, almost always involve estimation. That's JA120. Eighty-five percent of the revenues from those kinds of audits are attributed to estimation. That's JA88. Isn't it, Tanya, on your facial challenge, isn't it speculative that no set of circumstances will exist, and isn't that the standard under which we would look at a facial challenge? If I understand correctly, would the merit standard for these facial challenges be, there's no set of circumstances? Yeah, I mean, isn't that, isn't it, doesn't that, isn't it speculative to say that there is no set of circumstances? So I've, I'm sorry. That's my question. I don't understand this court's ripeness case law to turn on the no set of circumstances test. I understand that under Salerno and, and, and, So it turns on, it turns on adversity. That's right. And as to a facial challenge being adverse, I mean, it's, it's, it's a pretty broad statement to say there's no set of circumstances, and I don't know that our ripeness jurisprudence has gotten deeply enough into that, but this is some, a bit of an unusual case in making, in at this stage, in challenging the statute. So if, so first, there are, there are cases like the marathon decision, which is before this court, a little bit behind this one on appeal that held that a preemption claim and a fourth amendment claim were right where the audit was still ongoing. So certainly not unprecedented. And this court in the New Jersey retail merchants case from a few years ago entertained what was essentially even earlier declaratory judgment action, raising a preemption claim. I mean, I don't believe there was even an audit had started there. And the question, the court sustained a preemption challenge in a preliminary injunction posture. What about, I thought an instructive case was Judge Skaricka's opinion in UNDNJ versus Corrigan, where part of the, part of the opinion said court should hesitate to scrutinize decisions to initiate administrative audits because an investigation is the beginning of a process that may or may not lead to an ultimate enforcement action. Why, why doesn't that case apply here? So I think the court has always recognized that ripeness is not a one factor test. And I have five reasons why Corrigan is not, we may not get through them all. Why Corrigan is not on point. First, the court recognized there was no risk of penalties to the audit target for non-compliance. Second, there was no preemption claim. What's, what's the risk here? I mean, don't you agree that there'd have to be an actual money changing hands in order for that to be considered? I mean, the court can't, the state can't sort of sui sponte, pay, penalize your, your client, even if there's no material that's going to be changing hands, right? The state's briefed in this court says that they have a policy that if you cooperate immediately and turn over your documents, then that that's going to involve waiving the penalties. And if you don't, you're not going to be eligible for that waiver. So with respect, I think the state has linked the immediate cooperation with the imposition of what is by statute civil penalties that in this context are often a very significant fraction of the overall assessments. They're not de minimis by any means. Third, if I could return to Corrigan, or maybe second, there was no preemption claim. And so under New Jersey retail merchants and those kinds of cases, I think you can bring a facial preemption claim that the fact that an audit was initiated here is no audit in New Jersey retail merchants. Third, the court in Corrigan said essentially that the disputes would not affect the course of the audit, that the audit target was going to have to turn over the same stuff. And all that was really at issue was what's the standard for liability. Here, the whole ball of wax is the use of estimation, which expands the scope of the audit in our submission far beyond what would otherwise occur. Because as here, we've been demanded to turn over documents related to filings with other states with regard to various entities that are part of the claims corporate family. Let's look at your apply as applied claim for a second. You've not been ordered to turn over any specific assets. You've in essence, as a result of the audit, been told you must cooperate. Okay. So how are you aggrieved by being required to cooperate with state law? With respect to the as applied Fourth Amendment claim, Judge Fischer, if that's what I understand the question. We have two as applied claims, one is the biased decision maker claim, which is a due process claim. And I think it's the same. The aggrieved arises from the penalty threat, which basically says you have the document demand from the auditor. You either comply now or you're going to be subject to penalties later. And we don't have an opportunity to obtain review of that position until we've crossed the Rubicon. I mean, doesn't your argument also, didn't you also say that part of being aggrieved is the extent of the cooperation that will be required from claims as a result of compiling these records back to 1986? I think that's right. I mean, it's a large corporate family and we've been demanded to go all the way out to various entities that are not Delaware entities. And I would point you to the A.O. Smith case from this court, which was a rightness determination. It was not an audit posture per se, but the regulation and the demand that was being challenged was a rule that required the target to gather and report to the government a bunch of information that was going to be very burdensome to do. And the court found that that claim was ripe. Does that, you know, I'm trying to figure out what is the essential difference from the claims that you're making here and on an administrative agency and what happens in huge litigation, large scale litigation, where it may cost a defendant over a million dollars, maybe millions of dollars to produce documents that maybe they shouldn't have to present, but we don't allow the interlocutory appeals in these matters. That's correct. I don't think you're subject to immediate penalties in the same way. So is it the penalty part that really is the distinguishing feature here? I can understand that argument, but the fact that you have to spend a lot of money and a lot of time, which may be absolutely unnecessary, I don't know how that differs from large scale litigation generally. So I do think under Abbott Labs... And allowing an interlocutory appeal or rightness, whatever. I guess that's correct. I suppose you could, in extreme circumstances, have a mandamus remedy if you were trying to resist the compelled disclosure of, say, privileged information. And so it wouldn't... But I don't want to resist the hypothetical. I think that the penalties is a significant portion. And I would also just point out that where you are raising a preemption claim that challenges the process, so that's the Northeast Hubs, it's different than your opinion in Corrigan. And there, this court said, you can consider the burden... Essentially, the court said, the process is the injury, the submission to the process. And so I think preemption stands a little bit by itself. Just on Corrigan, because I know it's a key case, the court's analysis rested heavily on the concept of finality. It was an APA case, a Federal Administrative Procedure Act case, because the audit was being conducted by a federal agency. And it was, as I understand it, the claim was for an injunction of the audit process. The court's analysis was really framed on the finality, and it was not the three-pronged step-saver test that the court applies to declaratory judgment claims. And then, if I could turn briefly to the self-interested decision-maker claim, I don't think there to be any significant argument that that claim would be unright. It's fairly well-established that having to go through a process in front of a decision-maker that has a financial self-interest in the outcome... Wait a minute. Who are you saying is the decision-maker? Well, the claim is that Kelmar, the third-party auditor, is working on a... Isn't Delaware the final decision-maker? So that's certainly Delaware's position. Isn't that the case? Well, I think if you look at our complaint, we allege the number of things that are delegated to Kelmar, including creating the document, the scope of the document demands, coming up with an estimation methodology, and essentially running the audit. Now, I'm sure that Delaware will say they maintain final control, and if we were to... In order for us to prevail on the merits of that claim, I think we would have to show, and the court would have to explore on remand, the relationship and exact role of Kelmar. But those are, I think, merits issues. And in our submission, all of the relevant facts for that claim have already occurred. So there's no speculation there. Everything has taken place. I think that's right. It is uncontested that they are working on a contingency fee arrangement, and that the court could explore whether we have a meritorious claim. But in cases like Cary and Essu Standard Oil, the submission to a biased decision-maker, or the alleged submission to a biased decision-maker, is a justiciable injury. So then it turns on whether or not Kelmar is a decision-maker. I think that's right. That would be one key merits question on remand. I think that's right. Because there's an extensive appeal process, and through a former judge or an experienced lawyer, and then the courts. It's not as if you don't have a chance to remedy these matters. That's correct. And the due process jurisprudence deals with those issues. I think it's Gibson v. Berryhill, which is a U.S. Supreme Court case, that basically says even de novo review on appeal doesn't solve the initial problem of submission. You need an unbiased decision-maker in the first instance. I see my time has expired. Okay. Thank you, counsel. Thank you. May it please the court. My name is Steve Rosenthal of the firm of Loeb & Loeb, and I represent the Delaware defendants. And I'd like to make three major points here. Point number one, the whole foundation of the ripeness claim here is that the plaintiff claims is on the horns of a dilemma. Either they comply with the audit request, or they face penalties. There are no penalties for failing to cooperate with Kelmar. The state, this is a matter of statutory interpretation and statutory law. Yeah, but how can you say that when the letter that was sent in March of 2015 said, note that the state will consider the level of PAA's cooperation when determining whether penalties should be assessed? Ah, that's an entirely different question, Judge Fisher. What I am saying and what is the case is the failure to cooperate, there are no criminal penalties and no civil penalties. And that is what the law on ripeness, all of the cases on ripeness talk about. What she is talking about is if there is a finding of liability, and if there are penalties, we will take account of that fact in whether or not we will remit some of them. In other words, if you cooperate, that will be taken into account when we decide. This uses the word where the penalties should be assessed. Yes, that's the point. The point is it's not a penalty, it's a penalty. Judge Fisher, it's a critical distinction. The prosecutors, all sorts of administrators seek cooperation by promising that if there is a finding of liability, that cooperation will be taken into account. This court will go into a complete nether world, it seems to me, if ripeness turns not on whether the law imposes a criminal penalty on the act being requested, but whether the act being requested can be considered down the road, whether a raised eyebrow could be the basis for ripeness. And there is no case law, Your Honor. I don't know. If I get a notice to provide records all the way back to 1986, and then I get a letter that says, depending on what we find, your level of cooperation will determine the penalties, I'm going to think, wow, I'm going to either have to just give them my lowest paid clerk to show them where the file cabinet is, or I'm going to have to give them my highest paid administrative assistant to really point them to the right records, because I don't want to make matters worse here. I don't think that realistically you can say that shouldn't be taken into consideration. I will urge this court that we will go into a nether world here if cooperation is excluded. All we're saying is that you can bring the lawsuit. It doesn't mean that it is or isn't an appropriate administrative procedure under the statute. It's just a question of whether you can bring the lawsuit. You're right, Your Honor. And I don't think the fact that a cooperation may be taken into account overall at the end of the day constitutes the sort of penalty that is requisite here. All of the case law, and I've found no case that has stood for that proposition that a remission after the event gives rise to the sort of sanction necessary to give rise to whiteness. All of it, Patel, all these cases that have been cited were civil penalties or criminal penalties for the failure to do the act itself, and there is none here. Can I make a backup proposition? I'm sorry, you're representing what are the nature or what is the nature of the penalties that the statute provides? If there was a failure to provide the amount of money required, there is interest and there are penalties. Interest I can understand. What are the penalties? I'm a little vague on the issue of what the amount of penalties are or how they're calculated. I mean, essentially what you're saying in these reviews is, look, you should have turned this property on which there was no activity within, I don't know what the period of time is, was it one year under the Delaware statute? No, in this case it was three or five years. Okay, there was no activity. You should have turned this over in 2000, okay, and there's going to be interest. And I take it from this statute that there is a penalty in addition to the interest for not turning it over. So there could be a lot involved in this process. I mean, nobody knows yet in this case, but it seems to me there could be a lot of potential dollars involved. I don't disagree with your honor, but again, this is not for the failure to cooperate. It's for the once a finding has occurred. Okay, let me tell you a second aspect of it, which I think is critical as well and may not have been emphasized enough. Nothing is going to happen in this case. This was a request for voluntary cooperation, but they can just blow us off and they have for the last two and a half years. In order for us to actually get the documents in question, we have to serve them with a subpoena and again, if they don't cooperate, we have to seek enforcement in the chancery court. And the critical point is every one of these arguments, every one of these arguments can be presented to the chancery court and the chancery court has an opportunity to rule upon it before we can get the documents. And do they rule on these issues? Well, the history has been that we've had excellent cooperation and as a result, we have only very recently had to go into chancery court to seek enforcement. That's under the new amendments, is it? No, no, no. We went in under the we went under the previous statute. We did not go under the new statute. But didn't the new statute provide for the subpoena and the review in the chancery? The old statute had the subpoena. What was unclear was what court you went into and the new statute made clear you went into chancery. While we're talking about the statute, does the fact that the statute reduced the period to 10 years apply to this case? My understanding is that it does. That we're now under the new limitation. So the specter of going back to 1986 shouldn't. Yes. Or 81. 81. Or 81. Or 81. Well, it never was 81. It was always 86 because the 86 immediately after the subpoena, after the audit was initiated and they filed their lawsuit, the legislature in 85 changed to 86. So it never was 81 as a practical matter. But even now, we have the 10 year period under the new statute. You talk about the statute now, I guess it's talked about in the briefs. Do you notice any other things in the pipeline here that might affect the way we go on this? Not to my knowledge. And I don't think the passage of the statute is relevant for the ripeness claim because ripeness is generally ruled upon at the filing of the complaint. Exactly. So we have to look at the 86 time period and we have to look at the absence of any chancery court review. No, no, no, no, no, no. There was chancery court review, your honor. The state has always taken that we go into chancery court. What the statute did was make it explicit. We have gone into chancery court. We don't have any rulings because there are states. And I appeared in front of Judge Bouchard who said, there's no doubt we have the right to review it. Under Delaware law, it's implicit that all executive action under the Holland decision, you have a right to judicial review. The big question were issues about the scope of the review and arguably whether you go to superior court or chancery. But at least the state's position is there was no doubt that there was judicial review that we needed to issue a subpoena. Subpoenas, summonses were in the old statute. The only question was judicial review. And the chancellor and Delaware practice has always assumed there was judicial review. And these issues can be presented in that time. So it's not as if they lack, and that's a big argument of theirs, that they lack a judicial remedy. Let me go on to two additional points here because I think they're critical here. First of all, basically their position is the fact that they've made facial challenges virtually assures that there's rightness here. And they focus on the fact that there's estimation provided for in the statute. First of all, estimation is not automatic. If one looks at page, at the state required orientation on page 181, a recommendation is made. If you look at the middle of page 181, if records are incomplete, Kelmar makes a recommendation to the state and the state makes a determination whether to proceed. But even if you assume that estimation will take place, what it will consist of, how it will apply in their particular place, although they contend this is all well established, it's not established at all. Certainly. There's not a fixed formula? I thought they alleged there's a fixed formula for this. The process that has been used has generally been the same, but we have been open and we stated again and again that if an oddity wishes to use a different formula, if an oddity wants to change the estimation process, we are very much open to that and have, in fact, adopted estimation proposals that have been used, that have been proposed by oddities. We have a presumptive, but there are other, we've made adjustments, and that's one of the reasons why the whole notion of estimation, even if it were categorical, used in every case and we don't concede that, what it actually consists of will only be determined in the fullness of time. So just rolling back a little bit, your adversary, I think, has believed that it's used in every case. It's not used in every case. No, well, they said in every general, first of all, they haven't said it's not used in every case. It's used when there's a lack of records or inadequate records. We now are in a regime of 10 years. We don't know whether they lack records going back 10 years. I suspect not. But the fact of the matter is that it's not used in every particular case, and the statute, which is what's critical, as opposed to their speculation, simply vests discretion to use estimation. It doesn't compel use of estimation. It renders discretion. Well, before you sit down, I want to ask you about Kelmar and why that isn't right. Well, first of all, again, reference to the statute. Kelmar is simply an auditor. No decisions are made by Kelmar. Even his claim that what gets requested is made by Kelmar. All their requests, all their procedures are pre-reviewed by the audit manager, and what they do is carry out state instructions. They actually conduct an audit. There is no judicial or quasi-judicial action taken. All, by statute, all assessments are made by the state of Delaware. Kelmar is an auditor. They do calculations. They submit a report. Is that a merits decision, a merits question, or a ripeness question? No, it's a ripeness because this court can make that determination as a matter of law that, at this stage, they can't allege, there can't be a right claim with respect to that because the statute doesn't give Kelmar any authority to make determinations, and that's clear in the statute. Only the state makes assessments under 1155 as it existed at that time. Now, of course, your adversary brings up the issue with the contingency-based fee and suggests that's a violation of procedural due process. I think you respond that that's forfeited. Maybe you can talk about that a little bit. Well, I'm not going to rely on the forfeiture. I believe that that argument, like every other argument here, can be presented to the chancellor if and when we try to actually enforce the audit. Was it presented to the district court, though? Our opinion is, I reread the complaint again, I don't believe the argument was squarely to the district court. They point to snippets here and there. I don't think it was squarely presented, but I'm not relying on that in front of this court. Do we need to set it back to get a ruling on that? No, I don't think you need a ruling on any of these issues because the court's rationale really applied to everything. Their rationale was there were no penalties imposed and all these issues could be heard by the chancellor. Therefore, the district court didn't believe there was a ripeness here. We made a request. We may have said it in insistent words, but that didn't constitute the requisite adversity to constitute ripeness. Let me make my final point because I think this is critical. I do believe Your Honor's decision, this court's decision in Corrigan is controlling here. Although my opponent labors to distinguish Corrigan, this is an a for sure I case because in Corrigan there actually was a subpoena already. We don't even have a subpoena. I read very carefully Your Honor's ruling. Your Honor does mention finality, but finality was described as a subset of ripeness and there was a very extensive discussion of ripeness. Let me remind you of one important issue. In Corrigan, the court conceded that the issues in question were legal in nature, that there nonetheless held that it's inappropriate for the federal judiciary to interfere with a state audit and that the one exception is clearly not applicable. The one exception, the northeast hub, is when the actual investigation itself is preempted. That is not the case here. These investigations, these audits are in an area of clear state authority, unclaimed property, and we believe that the federal court should be loathe to interfere before an investigation even commences. Thank you, Your Honor. Thank you, counsel. Your Honor, on Corrigan and the finality aspect, I think this court's cases don't impose finality as a hard and fast requirement for ripeness. There are other areas of the law, including challenges that invoke the First Amendment or challenges involving land use decisions where you haven't required finality. As to Kelmar's role, we alleged in paragraph 66 of our complaint the roles that Kelmar had and why we think that makes them a decision maker. I think it's a merits argument for the district court to consider on remand. Judge Chigaris, I'm happy to talk about where we preserve that question in the district court complaint, paragraph 116. We said Kelmar, quote, has a large financial stake and, quote, is not a neutral party, and we claimed, quote, Kelmar's compensation will be contingent on the amount of unclaimed property liability that Delaware ultimately assesses. Was that picked up, though, in the district court? So we filed a complaint. Delaware moved to dismiss. We pointed out in our opposition to the motion to dismiss that they hadn't addressed all of the claims that we had raised. They chose not to come back to that in their reply brief. So, you know, I think it was flagged for the district court in that we tried to flag it in that manner. As to whether there will be estimation, the key thing is that Delaware has said over and we alleged here at JA-102 statements by Delaware in the past that estimation is, quote, necessary. Estimation, quote, would not have to be utilized, have to be, if a company had records, and that's JA-102 and JA-121. On the question of whether it's an 86 look back or a 10-year look back, I think the bottom line is that it doesn't matter for purposes of rightness because the key defect is still we're being, estimation will be used for a period where we say we don't have records. And Delaware says we don't know whether, you don't know whether we have records. We alleged that we follow standard document retention policies. We alleged that we did not have records back to 1981. This is complaint 136 and complaint 33. We alleged in 33 that standard document retention policies are 7 to 10 years. And this court's decision in Presbyterian, New Jersey, deals with how you interpret a complaint at the rightness stage. And there you drew inferences in favor of the plaintiff who was seeking to resist rightness. Even if you thought our complaint was ambiguous about whether we have records for the relevant period, I think the ambiguity would be resolved in our favor. The Delaware courts have not given any, have not litigated the estimation issue, have you, the propriety of estimation? Not to my knowledge. There's the Temple Inland case, which is a federal, the federal district court in Delaware, which is the one that has reached the merits. On the availability of chancery court review, that is something that was not in the statute until very recently. There's a Blackhawk case, which is flagged in the briefs, where it was at least argued that the concern was the statute was totally silent about subpoena power or review in the chancery court. There are other Delaware statutes that make it very explicit when there is subpoena power. And obviously, Delaware has now revised the statute to make it explicit. But our key point is that that remedy is too late. They're forcing us at the time of the document demand to decide whether to comply or face penalties. And the statute, even if you assume the new statute applies, it only authorizes Delaware to go to the chancery court to enforce a subpoena. And at least with the letter they sent us, the message was, and we thought it was very clear, you comply now or you're going to face penalties down the road. And so under Patel and the Fourth Amendment cases, the question is, do you have a remedy before you are forced to make that kind of choice? What is the nature of the penalties we're talking about? So they're found in 1159A of the old statute, 1183 of the new statute, 5% a month for failure to file a report, 0.5% a month for unpaid amounts. I think it's the same under both penalties. But we alleged in our complaint that penalties are often a very significant fraction, especially if you're talking about an audit that goes back to 1986. And with respect to, I see my time has expired. You finish your question. The thought was, if you look at the Temple Inland case, the reason you don't file reports is that Delaware advised folks who had no liability, please don't file $0 reports. We don't want to flood them. And that was part of the analysis in the Temple Inland case about why there was a gotcha problem here. Just to answer this question and fully understand the burden that you're claiming, what kind of assets could you possibly be holding for third parties that would be subject to this cheat? The Delaware statute defines unclaimed property quite broadly. And I think it can involve things like an uncashed paycheck for an employee or other In the oil and gas business, which my client is, there are royalty interests when you are taking oil out of the ground. It is often fractionalized by contract. And there are royalty interests. And Plains does a sheet property to other states. But that's because that's where its operations are. And that's where the oil is coming out of the ground. And the concern here, the reason estimation is such a big deal, is that we've alleged the estimation methodology considers property issued to other states as part of the baseline and then calculates the Delaware liability based on that. And so it is a meaningful concern for us, if that answers your question. Why didn't you wait until you got a subpoena on this to bring the lawsuit? We received a letter that closed with a threat that said you're going to face penalties back to 1986 or even 1981. That initial 1981, I take the point. The statute's been amended. But the document demand was never amended. It was of significant concern. And this is not the only lawsuit challenging Delaware's sheet policies. And there are other ones ahead of it and behind it in the chain. And as I said, the Marathon case, which happens, and the Temple Inland case, other targets of audits were bringing the same kinds of declaratory judgment actions. So we thought the claim was right. It looks like the Delaware attorney general is going to be busy, too. Well, they've certainly been amending the statute. But we think a lot of good could be done by resolving the core estimation issue, which remains completely live under the current law. Are there no further questions? No, thank you. Thank you very much. Thank you. We'll take the case under advisement. Thank counsel for their excellent argument.